**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: October 13 2015

John P. Gustafson
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| In Re: | Case No. 13-34284 |
| Joseph A. Spencer and Dee V. Spencer, | Chapter 7 |
| Debtors. | Adv. Pro. No. 14-03018 |
| | Judge John P. Gustafson |
| Daniel M. McDermott, United States Trustee, | |
| Plaintiff, | |
| v. | |
| Joseph A. Spencer, et al., | |
| Defendants. | |

### MEMORANDUM OF DECISION

This adversary proceeding is before the Court for decision after trial on the amended complaint [Doc. # 22] of Plaintiff Daniel M. McDermott, United States Trustee ("the UST") alleging that Defendants' discharge of debts should be denied under claims made pursuant to 11 U.S.C. §§ 727(a)(2)(A) (Count 1), (a)(3) (Count II), (a)(4)(a) (Count III), and (a)(5) (Count IV).

The district court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b) as a civil proceeding arising in a case under or arising under Title 11. This proceeding has been referred to this court by the district court under its general order of reference. 28 U.S.C. §157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Proceedings to determine objections to discharge are core proceedings that the court may hear and decide. 28 U.S.C. §157(b)(1), (b)(2)(J).

This Memorandum of Decision constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052. Regardless of whether specifically referred to in this Memorandum of Decision, the court has examined the submitted materials, weighed the credibility of the witnesses, considered all of the evidence, and reviewed the entire record of the case. Based upon that review, and for the reasons discussed below, the court finds that Defendant Joseph A. Spencer's discharge will be denied pursuant to 11 U.S.C. §727(a)(4)(A).

**FINDINGS OF FACT**

Defendants Joseph A. Spencer ("Mr. Spencer") and Dee V. Spencer ("Mrs. Spencer") are the joint debtors in the underlying Chapter 7 case filed on October 16, 2013. Mr. Spencer, over the course of the past thirty-nine (39) years, has worked, among other positions, as a teacher, a theater set designer, an associate dean at the University of Toledo, a management consultant in the field of manufacturing, and as a Vice President and Partner at Findlay Davies, and has an advanced degree. Mrs. Spencer worked for a security company and Goodwill over the of course of their marriage, but she has largely spent her time as a homemaker.

Mr. Spencer testified that in early April 2013, he had originally consulted with a bankruptcy attorney regarding a possible bankruptcy filing, but after several meetings, Mr. Spencer decided not to employ the first attorney he consulted. Mr. Spencer informed the court that one of the reasons he declined to employ the attorney had to do with the change in the amount a debtor could claim as an Ohio homestead exemption. Based on Mr. Spencer's own research on filing for bankruptcy, he learned that Ohio's homestead exemption, that had been capped at $21,625.00, had recently increased to $132,900.00. When this information was brought to the first attorney's attention, Mr. Spencer testified that the attorney was unaware that any change had occurred.

Using a different bankruptcy attorney, Mr. and Mrs. Spencer (collectively, "Defendants") filed their petition on October 16, 2013. [Case No. 13-34284, Doc. # 1]. At the same time, they filed their bankruptcy

2

Schedules and the Statement of Financial Affairs ("SOFA"), signed under penalty of perjury (the "Original Schedules") [*Id.*].

On Defendants' Original Schedules, they listed personal property with a total value of $10,866.00. [Pl. Ex. A, p. 22]. The personal property listed in Defendants' Original Schedules consisted of the following: $1,800 in an account listed as "PNC Bank"; "[m]isc. furniture and household goods" valued at $2,000.00; "[m]isc. wearing apparel" valued at $700.00; a "TIAA Cref Retirement Annity" valued at $4,000.00; a "1994 Oldsmobile Bravada" valued at $522.00; and a "2003 Saab" valued at $1,844.00. [*Id.* at pp. 20-21].

On Defendants' Original Schedule F, they scheduled $79,311.40 of unsecured nonpriority claims, mostly from credit cards and other consumer debt. [*Id.* at pp. 26-31]. On their SOFA, filed with their Original Schedules, Defendants checked the box indicating "none" when describing the "gifts or charitable contributions they made within one year immediately preceding the commencement of the case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member." [*Id.* at 38]. Additionally, on Question 10 of their SOFA, Defendants described as "none" the "property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as a security within two years preceding the commencement of the case." *Id.* at 39.

Mr. Spencer testified at trial that their initial petition and Schedules were filled out by the bankruptcy attorney they employed to file their Chapter 7 case. Mr. and Mrs. Spencer testified that they both sat down and answered questions asked by their bankruptcy attorney as he prepared their petition. The Defendants stated that they did not fill anything out, and their attorney "wrote down the numbers." Mr. Spencer, when asked at trial whether his answer to SOFA question 7 (regarding gifts made in the previous year), was indeed "none" when originally asked by his attorney, confirmed that his answer on that day was "none." Mr. Spencer did not remember being asked any questions regarding Question 10 of the SOFA. He believed that his bankruptcy attorney had "paraphrased" the question, but he could not recall with specificity whether the question was read to him verbatim, or if the question had been paraphrased. "It was my recollection that we were talking about the prior year," as opposed to the two year period of property transfers set forth in Question 10. *See also*, Pl. Ex. G, pp. G21-G23.

Mrs. Spencer testified that she "vaguely" remembered sitting in the attorney's office and going over Question 7 on their SOFA, regarding gifts. As for Question 10, Mrs. Spencer recalled thinking that the

3

question was asking about real estate or real property.  *See also*, Pl. Ex. G, pp. G21-G23.

After Defendants' petition had been filed, and prior to the §341 meeting of creditors, attorney Ben Randall ("Attorney Randall") contacted Patti Baumgartner-Novak ("the Chapter 7 Trustee" or "Trustee"), the Chapter 7 Trustee assigned to Defendants' case.  At the trial, the Trustee testified that Attorney Randall had reached out to her based upon his personal knowledge and "made a referral" that Defendants assets were not accurately listed on their petition, and the Trustee noted in her testimony that there was no jewelry listed on Defendants' Original Schedules. [Pl. Ex. A, p. 20, Line 7].

In response to the "referral", the Trustee requested that debtor's counsel and Defendants produce more detailed schedules.  Specifically, the Trustee wanted a breakdown of what constituted the $2,000.00 listed as "[m]isc. furniture and household goods" in Defendants' Schedule B.  It was at this point, the Trustee stated, that she sent a referral to the UST that "something was not passing the smell test."  The Trustee also contacted debtors' attorney regarding the accuracy of the Schedules, [Pl. Ex. E, pp. E10- E11] putting Defendants on notice, heading into the meeting of creditors, that information provided in connection with their bankruptcy needed to be accurate.

Debtors' attorney, per the Trustee's request, filed an Amended Summary of Schedules and Amended Schedules B & C, that Defendants signed under penalty of perjury. [Case. No. 13-34284, Doc. # 15; Pl. Ex. C]. Defendants' Amended Schedule B, Line Item 4 was amended to include a $11,219.00 value for "[m]isc. furniture and furnishings, household goods, wearing apparel, books, artwork, sports equipment and musical instrument."  Line Item 7 was amended to list a $2,015.00 value for [m]isc. jewelry.  On their Amended Schedule C, Defendants' claimed an exemption of $24,500.00 for their furniture and furnishings [*Id.*], to which the Trustee filed an objection. [Case. No. 13-34284, Doc. #16].

Prior to the §341 meeting, the Trustee had received Exhibit H-2A. [Pl. Ex. H, p. H-2A] from Defendants.  The Trustee stated that she thought the document was an insurance rider, and she could glean from the insurance document, which had an effective date of "08-31-12", that Defendants appeared to own a piece of property or artwork titled "Ancient View of the River Glass House," ("Glass House") with an insurance value of $16,000.00.  Also listed were item numbers "28" and "33", which were two items of jewelry valued, for insurance purposes, at $1,500 and $1,400 respectively. [*Id.*]

The Trustee received an itemized list of Defendants' household items on December 4, 2013. [Pl. Ex. D].

The Trustee conducted the §341 meeting of creditors on December 10, 2013.  Defendants and

4

Defendants' attorney appeared at the hearing in person. The Trustee testified at the trial that she specifically wanted to ask Defendants at the hearing if they had transferred any property to their daughter,[1] and she also wanted to discover the location of the "Glass House" artwork. At the meeting of creditors, each Defendant testified in the affirmative that they signed their petition, and they each testified in the affirmative that they reviewed the petition and made sure it was true and correct at the time they signed it. [Pl. Ex. E, pp. E-3 - E-4]. Each Defendant answered "No" when asked if they had given away, sold or transferred any property in the last year. [*Id.* at p. E-5].

The Transcript of the First Meeting of Creditors further reflects:

THE TRUSTEE: Transferred property into the names of friends or family members in the last four years?

MRS. SPENCER: No.

MR. SPENCER: No.

[*Id.* at p. E-6].

The Trustee also asked several questions about the daughter, and transfers that may have been made to her:

THE TRUSTEE: Okay. Have you forwarded any property or jewelry to your daughter in Ann Arbor – –

MRS. SPENCER: No.

THE TRUSTEE: – – in the last year?

MRS. SPENCER: No.

THE TRUSTEE: Did you transfer property to storage, to a third party – –

MRS. SPENCER: No.

THE TRUSTEE: – – to your daughter prior to filing?

MRS. SPENCER: No. The only thing was in February of '12 we sold the one major piece we had to live use – – to live on.

[*Id.* at p. E-12].

Regarding the Defendants' answers at the meeting of creditors in relation to transferring property

---

[1]/ The "daughter" is Mr. Spencer's biological daughter, and Mrs. Spencer's step-daughter. At trial, Mrs. Spencer indicated she was comfortable with simply using "daughter".

to their daughter, the Trustee testified at trial that "[b]ased on what I know today, [those answers were] untrue."

Before the hearing concluded, the Trustee requested that Defendants provide her with a list of paintings and/or prints that they owned, where they were purchased, and for what price the items were purchased. [*Id.* at pp. E-14 - E-15]. Finally, the Trustee requested a complete version of Defendants' insurance policy, as Pl. Ex. H-2A appeared incomplete. Specifically, the Trustee wanted Defendants' insurance police from August of 2012 through August of 2013, as well as a copy of the policy providing coverage from August of 2013 to August of 2014. [*Id.* at pp. E-16 - E-17].

The Trustee testified that she received the completed insurance policy [Pl. Ex. H, pp. H-3 - H-5] within sixty (60) days of her request at the meeting of creditors. As of August 31, 2012, less than fourteen (14) months before Defendants filed their petition, they maintained insurance riders through the "The Hartford Insurance Group." These riders included thirty-two (32) unique pieces of jewelry, insured for between $250 and $15,500.00, with a total replacement value for all the pieces listed as $58,985.00. [*Id.*]. The insurance riders also included three furs insured for a total of $10,300.00 and the "Glass House" artwork, with an insurance value of $16,000.00.

After the meeting of creditors, Defendants again filed an Amended Summary of Schedules and an Amended Schedule C, in which Defendants claimed an exemption of $21,400.00 in their furniture and furnishings. [Case No. 13-34284, Doc. # 19]. The court held a hearing on the previously filed Amended Schedules and the Trustee's Objection [*Id.* at Doc. ## 15-16] on January 23, 2014. The hearing was adjourned to March 27, 2014, as the Trustee wanted to obtain further information from the Defendants regarding a valuation of their household furnishings and jewelry. [*Id.* at Doc. # 26].

On February 10, 2014, the UST filed the initial complaint against Defendants, seeking a denial of their discharge. In connection with the UST's Complaint, Defendants appeared for a deposition. During Defendants' deposition on June 6, 2014, Mr. and Mrs. Spencer reviewed their signed Declaration Re: Electronic Filing of Documents and Statement of Social Security Number. [Case No. 13-34284, Doc. # 5]. They each stated that they signed the document, and that when they signed the document indicating that the petition, statements, and schedules were true, correct, and complete, they understood that they were signing it under penalty of perjury. [Pl. Ex. G, pp. 14-15].

During their deposition, Defendants testified that they sold the following during the two years immediately preceding the commencement of their Chapter 7 case: a "Runkle painting" and a "Russell

6

painting" for approximately $400; two fur coats for approximately $650; a "Red Arnold painting" and a "Marty glass piece" for approximately $475; a lady's Gucci watch for approximately $500; two V-shaped 0.26-carat diamond baguettes and a 0.12 carat diamond ring for approximately $700; a sapphire and diamond bracelet and diamond necklet for approximately $1,000; a diamond pendant and 14k gold chain for approximately $450; two Movado watches for approximately $1,650; and a wood sculpture and large glass vase for approximately $325. [Pl. Ex. G].

Defendants also testified that within one year immediately preceding the commencement of their bankruptcy case, they gifted the following; to their daughter Christina M. Spencer, a 14k two-tone pendant with a European cut diamond, and a 14k two-tone snake chain; and to Bob Meeker, a "black and white Arnold painting". [*Id.*]. The gifted items were valued by Defendants at $50, $127, and $350, respectively, in their most recent filing of an Amended Statement of Financial Affairs. [Case No. 13-34284, Doc. # 58]. None of the aforementioned items which were sold and/or gifted were disclosed in Defendants' Original Schedules, nor were they disclosed by Defendants when they were questioned by the Trustee at the §341 meeting of creditors.

The court also notes that Mrs. Spencer testified during the 341 Meeting, [Pl. Ex. E, pp. E-12 - E-13] and in the deposition [Pl. Ex. G, pp. G-51 - G-53] that the Debtors sold the "Glass House" to Dr. Nickolai Talanin ("Dr Talanin") in February 2012 for cash, whereas Mr. Spencer testified at the trial that the Glass House was sold in "mid 2010". Dr. Talanin averred in an affidavit provided at trial that he "purchased the sculpture around mid-February, 2010 for $15,000, paid in cash." [Def. Ex. A].

At the trial on the UST's Complaint, Defendants each testified that they had reviewed their petition and schedules before signing them under penalty of perjury.

## LAW AND ANALYSIS

The UST objects to Defendants' possible discharge and seeks a determination that Defendants discharge be denied pursuant to 11 U.S.C. §§727(a)(2)(A) (Count 1), (a)(3) (Count II), (a)(4)(a) (Count III), and (a)(5) (Count IV). A plaintiff must prove exceptions to dischargeability and the elements of a §727(a) claim objecting to discharge by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291(1991); *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000); Fed. R. Bankr. P. 4005. The provisions of §523(a) and §727(a) are to be strictly construed against the creditor (or plaintiff) and liberally in favor of the debtor. *Keeney,* 227 F.3d at 683; *Rembert v. AT&T Universal Card Servs. (In re Rembert),* 141 F.3d 277, 281 (6th Cir. 1998).

7

The UST's post-trial brief [Doc. # 43] focuses on his claim brought under Section 727(a)(4)(A), and it is pursuant to this section that the court shall grant judgment in favor of the UST, and will deny Defendant Joseph A. Spencer's discharge.

**I.  11 U.S.C. § 727(a)(4)(A)**

A bankruptcy discharge is a privilege and not a right and should be granted only to the honest but unfortunate debtor. *Grogan v. Garner,* 498 U.S. 279, 286-87 (1991). "[T]he bankruptcy court must balance the policy in favor of liberally applying the Bankruptcy Code to grant discharge to the honest debtor against the policy of denying relief to debtors who intentionally engage in dishonest practices and violate the Bankruptcy Code provision." *Yoppolo v. Walter (In re Walter),* 265 B.R. 753, 758 (Bankr. N.D. Ohio 2001)(*quoting, Solomon v. Barman (In re Barman)*, 237 B.R. 342, 352 (Bankr. E.D. Mich. 1999)).

A prerequisite to the privilege of discharge is complete financial disclosure. *Keeney*, 227 F.3d at 685. Thus, under §727(a)(4)(A), a debtor is denied a discharge if "the debtor knowingly and fraudulently, in or in connection with the case. . .made a false oath or account[.]" In order to prevail, a plaintiff must prove, by a preponderance of the evidence that:

> 1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case.

*Id.* at 685.  The Sixth Circuit explained fraudulent intent as contemplated under this section as follows:

> [I]ntent to defraud "involves a material representation that you know to be false, or, what amounts to the same thing, an omission that you know will create an erroneous impression." *In re Chavin*, 150 F.3d 726, 728 (7th Cir.1998).  A reckless disregard as to whether a representation is true will also satisfy the intent requirement.  *See id.* "'[C]ourts may deduce fraudulent intent from all the facts and circumstances of a case.'" *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 252 (4th Cir.1987).  However, a debtor is entitled to discharge if false information is the result of mistake or inadvertence.

*Id.* at 685-86.  A false oath is material if it "'bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.'" *Id.* at 686 (*quoting, Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992)).

"The fundamental purpose of §727(a)(4)(A) is to insure that the trustee and creditors have accurate information without having to do costly investigations." *U.S. Trustee v. Zhang (In re Zhang)*, 463 B.R. 66,

8

86 (Bankr. S.D. Ohio 2012); *see also, Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir. 1987)("Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight."). A bankruptcy trustee has neither the time nor the resources to conduct an in-depth review of each and every debtor, necessitating accurate initial disclosures as a key feature of the U.S. bankruptcy system. *Carlucci & Legum v. Murray (In re Murray)*, 249 B.R. 223, 230 (E.D.N.Y.2000); *Roudebush v. Sharp (In re Sharp)*, 244 B.R. 889, 891–92 (Bankr. E.D. Mich. 2000).

In his complaint, the UST alleges that Defendants made a false oath or account in their original SOFA, signed under penalty of perjury, when they described as "none" both the "gifts or charitable contributions they made within one year immediately preceding the commencement of the case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member", and the "property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as a security within two years immediately preceding the commencement of the case." [Doc. # 33, p. 3, ¶¶ 11-12].

The UST also argued at trial and in his post-trial brief [Doc. # 43] that Defendants again made a false oath or account at the 341 meeting of creditors. While under oath, each Defendant answered "No" when asked if they had given away, sold or transferred any property within the last year. Each Defendant also answered "No" when asked if they had transferred property into the names of friends or family members in the last four years. [Pl. Ex. E, p. E-6]. Their testimony at the deposition [Pl. Ex. G] and trial, and their final amended SOFA [Doc. # 58] confirms that Defendants gifted property within one year immediately preceding their Chapter 7 filing [Pl. Ex. G, pp. G-68 - G-69] and transferred property within the two year period immediately preceding their Chapter 7 filing. In addition, Defendants transferred a substantial amount of jewelry to their daughter within the four years prior to filing [Pl. Ex. G, p. G-67 - G-68], contrary to their testimony at the §341 Meeting. [Pl. Ex. E, p. E-6].

Moreover, while the Trustee's questioning may not have been as precise as it could have been in regards to the substantial gifting of jewelry in 2010 in connection with Defendants' daughter's wedding, the Trustee made inquiries about transfers to the daughter and jewelry. [Pl. Ex. E, pp. E-11 - E-12]. While Debtors were responsive to inquiries about the sale of the "Glass House", which occurred on either February of 2012 (more than one and a half years prior to filing) or in mid-2010 or earlier (3+ years prior to filing), the gifts to their daughter were not disclosed. To the extent Defendants' defense is based upon misunderstanding the time frames in the questions, or the meaning of "property" on the one hand, and not

9

responding to the import of the questions the Trustee asked about transfers of jewelry to their daughter based on a hyper-technical parsing of the Trustee's questions - the court finds those positions contradictory and unpersuasive. Moreover, the Chapter 7 Trustee did specifically asked about the transfer of jewelry in the previous year, [Pl. Ex. E, at p. E-12], Defendants answered "no", [*Id.*] when in fact two items of jewelry, with insurance values of $1,450 and $625, had been gifted to the daughter within the previous year. [Pl. Ex. G, pp. G-68 - G-69; Def. Ex. B]. While the amended SOFA asserts an aggregate dollar value on the gifts made to Defendants' daughter as being below $200, those valuations appear to have been arrived at after the failures to properly disclose the gifts of two pieces of jewelry on Question 7 of the SOFA. Moreover, the Trustee's question about gifts to the daughter in the previous year was asked without any dollar limitation. [Pl. Ex. E, p. E-12].

      Defendants admitted at trial that they made statements under oath, meeting the first element set forth in *Keeney*. They also admitted that the statements included in their originally filed Schedules and SOFA were false, as were the statements made in their testimony at the §341 Meeting, satisfying the second element. Skipping to element five (5), materiality of a statement requires that a debtor's false statement "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence or disposition of his property." *Sheehan & Assocs. v. Lowe*, 2012 WL 3079251, at *7 (E.D. Mich. 2012); *Duree & Assocs., P.C. v. Dunn (In re Dunn)*, 2014 WL 1612232, at *4 (Bankr. E.D. Ky.2014). In the case at hand, there is no question that the fifth element has been met, as false statements made in both Defendants' Schedules and SOFA concern the discovery of assets and the existence or disposition of their property. It should also be noted, the Trustee eventually secured a Five Thousand Dollar ($5,000) settlement from Defendants' daughter [Pl. Ex. J; Doc. # 47] for transfers which were not disclosed during the §341 Meeting in response to the question regarding the transfer of property to friends or family members in the previous four years. [Pl. Ex. E, p. E-6].

      This brings the court to an analysis of the third and fourth *Keeney* elements, which are the most commonly contested elements of a §727(a)(4)(A) action. *U.S. Tr. V. Halishak (In re Halishak)*, 337 B.R. 620, 627 (Bankr. N.D. Ohio 2014). In considering the third element, the court in *Ayers v. Babb* wrote, "[k]nowledge that a statement is false can be evidenced by a demonstration that the debtor knew the truth, but nonetheless failed to give the information or gave contradicting information." *Ayers v. Babb (In re Babb)*, 358 B.R. 343, 355 (Bankr. E.D. Tenn.2006). Here, the UST demonstrated that Defendants knew the truth but failed to give the information. Through their testimony at the deposition and trial, Defendants

10

made it clear to the court that they were well aware of, if not the exact description of certain items given away or sold, the fact that they sold numerous pieces of personal property within the two years preceding their filing and gifted several other items within one year before they filed, with some of the transfers occurring just five to seven months before they filed their petition. [Def. Ex. C]. Thus, the third *Keeney* element has been satisfied.

Fraudulent intent is a factual issue determined by the court based on the totality of the circumstances. *In re Keeney,* 227 F.3d at 686; *Hamo v. Wilson (In re Hamo)*, 233 B.R. 718, 724 (6th Cir. BAP 1999). It "requires that the debtor . . . made or failed to make the statement with the intention of being fraudulent." *Hunter v. Sowers (In re Sowers)*, 229 B.R. 151, 159 (Bankr. N.D. Ohio 1998). Demonstrating fraudulent intent "involves a material representation that [Defendants] know to be false, or, what amounts to the same thing, an omission that [Defendants] know will create an erroneous impression." *In re Keeney,* 227 F.3d at 685. A reckless disregard or an indifference for the truth will also demonstrate fraudulent intent. *Id.* at 686; *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992). And, intent can be inferred from Defendants' conduct, and a continuing pattern of false statements and/or omissions in bankruptcy schedules exhibit a reckless indifference for the truth. *In re Hamo,* 233 B.R. at 725.

In this case, the court infers a fraudulent intent on the part of Defendants based upon their conduct, as the UST proved by a preponderance of the evidence a continuing pattern of false statements and omissions in Defendants' bankruptcy Schedules, SOFA, and in their testimony at the §341 Meeting, demonstrating at least a reckless indifference for the truth. Defendants also omitted from their SOFA several gifts of jewelry and artwork they had given to friends and family in the year prior to their filing, and numerous pieces of personal property they had sold in the two years prior to their filing. Their petition was filed with their declaration stating under penalty of perjury the documents were true, correct, and complete. [Pl. Ex. B]. They were also under oath during their testimony regarding gifts and other transfers of property at the §341 Meeting.

Despite being put on notice by the Trustee's request for a detailed listing of their household goods on Schedule B, just seven (7) days prior to their 341 Meeting, they did not file an amended SOFA at that time. At the 341 meeting of creditors, Defendants testified that they reviewed their petition and made sure it was true and correct at the time they signed it. [Pl. Ex. E, pp. E-3 - E-4]. They each answered "No" when asked if they had given away, sold or transferred any property in the last year. Each Defendant also answered "No" when asked if they had transferred property into the names of friends or family members

11

in the last four years. [*Id.* at pp. E-5 - E-6].   These statements were false.

The Trustee specifically asked the Defendants if they had "forwarded any property or jewelry to your daughter in Ann Arbor . . . in the last year?"  Mrs. Spencer answered, "[n]o."  The Trustee continued, asking "[d]id you transfer property to storage, to a third party . . . to your daughter prior to filing?"  Mrs. Spencer again answered, "[n]o."  [*Id.* at p. E-12].  These statements were also false, as based upon testimony and their Amended SOFA [Def. Ex. C; Case No. 13-34284, Doc. # 58, Q. 7], which was not filed until after the trial on this matter, Defendants had given property to their daughter earlier that year, as well as having sold several pieces of jewelry to third parties within the previous two years. [Def. Ex. C].  It was only after requests by the Trustee for complete insurance riders, and a deposition conducted by the UST, wherein the UST conducted a line-by-line review of Defendants' insurance riders, that the Defendants answered truthfully regarding the disposition of their personal property prior to filing.  Even after the deposition was conducted and it became clear that numerous items were sold and/or gifted such that they should have been listed under questions 7 and 10 of their SOFA, Defendants failed to amend said SOFA for over a year.

At the trial, the court had the opportunity to observe the demeanor and credibility of Defendants during their testimony, and it does not credit Defendants' testimony that these omissions in their Schedules and SOFA were innocent oversights on the part or their attorney, or that they simply misheard the questions being asked of them at the time their petition was being filled out or at their meeting of creditors.  Defendants had numerous opportunities to correct the record, and they chose not to do so, nor did they ask for clarification of what was being asked of them at the meeting or creditors.   Therefore, the court finds that Plaintiff has proven by a preponderance of the evidence, pursuant to the elements set forth in the *Keeney* decision,  that Defendants knowingly made false statements under oath with the requisite fraudulent intent, and the statements were materially related to their bankruptcy case.

The court then turns to Defendants attempt to rebut the evidence presented by the UST regarding the false oaths or omissions.  Defendants' testimony and rebuttal, that they misunderstood their lawyer's questions and that they misheard and/or misunderstood the Trustee's questions, and that the misstatements were not material, are not well-taken as to Joseph A. Spencer.  The evidence of the number of errors in the statements that were made under oath has not been sufficiently rebutted by contrary evidence.  The UST has shown at least a "reckless disregard or an indifference for the truth" regarding the false statements that were made under oath by Mr. Spencer in both the SOFA, signed under penalty of perjury, and the responses to the Chapter 7 Trustee's questions during the §341 Meeting.  The facts presented by the UST regarding

12

the statements made, and the number of transfers which were not disclosed, combined with Debtor Joseph A. Spencer's education and background in business, prevent the court from accepting the defenses offered for the conduct of Mr. Spencer.

It is a much closer case for Debtor Dee V. Spencer. While she was the primary person testifying as to some issues during the §341 Meeting, she does not have the same level of education or a business background. Attorney for the Defendants presented some evidence as to the medication(s) Mrs. Spencer was taking, and that it caused memory and other cognitive problems for her. The court also had an opportunity to observe Dee V. Spencer's ability to process information as she testified, which standing alone, may not have been enough to warrant the granting of discharge in this case. However, there was some corroborating evidence in her handing of Defendants' homeowner's insurance.

There was testimony that Mrs. Spencer was responsible for handling the Defendants' homeowner's insurance. The evidence presented, by both the UST and Defendant-Debtors, demonstrated that insurance remained in place for pieces of jewelry long after they had been gifted or sold. Obviously, there is a cost associated with the insurance coverage for items that did not need to be insured, and despite an economic incentive, at the time, to be accurate regarding items that remained in the Debtors' possession, updated information was not provided to the insurance company.

As several courts have stated, completely denying a debtor's discharge is an extreme step and should not be taken lightly. *See e.g.*, *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3rd Cir. 1993). That admonition is reinforced by holdings that exceptions to a debtor's discharge under §727(a) are to be construed liberally in favor of the debtor. *See e.g.*, *United States Trustee v. Zhang (In re Zhang)*, 463 B.R. 66, 78 (Bankr. S.D. Ohio 2012). Accordingly, despite a strong prima facie case for denial of discharge, the court finds that the UST has not met its burden of proof under Federal Rule of Bankruptcy Procedure 4005 as to Defendant Dee V. Spencer.

### **CONCLUSION**

The UST has successfully met his burden of proof on his claims against Defendant Joseph A. Spencer under 11 U.S.C. §727(a)(4)(A), and a judgment on the complaint will be entered in favor of Plaintiff Daniel M. McDermott, United States Trustee, thereby denying Defendants Joseph A. Spencer's discharge.

A separate judgment in accordance with this Memorandum of Decision will be entered by the court.

###